IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| RCA LABORATORY SERVICES, LLC, a Delaware Limited Liability Company, D/B/A GENETWORx, <br><br> Plaintiff, <br><br> v. <br><br> LIFESPACE COMMUNITIES, INC., <br><br> Defendant. | Civil Action No.: 3:23-cv-00864 |

### AMENDED COMPLAINT

Plaintiff, **RCA LABORATORY SERVICES, LLC, a Delaware Limited Liability Company, D/B/A GENETWORx** ("Plaintiff" or "RCA"), by and through its undersigned counsel, hereby files this *Amended Complaint* ("Complaint") as a matter of course, pursuant to Rule 15(a)(1)(B), against Defendant, Lifespace Communities, Inc., ("Defendant"),[1] in connection with the delivery of certain COVID-19 infection tests (as described herein) for which Defendant has not paid for or otherwise reimbursed Plaintiff. In support thereof, RCA avers as below:

### PARTIES

1. Plaintiff, RCA Laboratory Services, LLC (previously defined as Plaintiff or RCA) is a Delaware Limited Liability Company with a principal place of business located at 2201 Renaissance Blvd., 3rd Floor, King of Prussia, Pennsylvania 19406.

2. "GENETWORx" is a d/b/a alias under which Plaintiff operates some of its business, particularly the sale and provision of the COVID-19 infection tests at issue in this action

---

[1] Defendant and Plaintiff are sometimes collectively referred to herein as the "Parties."

1

(the "Action"). The majority of the contacts, communications, and orders between the parties came from and/or were directed to the Genetworx/RCA facility located at 4060 Innslake Drive, Glen Allen, VA 23060.

3. Defendant, Lifespace Communities, Inc., (previously defined as Defendant) is, upon information and belief, an Iowa corporation, with a principal place of business located at 4201 Corporate Drive, West Des Moines, Iowa 50266.

4. Upon information and belief, Defendant operates senior living and assisted living facilities throughout the United States.

5. Upon information and belief, Defendant can be served with initial process at CT Corporation System, 400 E Court Ave., Des Moines, IA, 50309.

## JURISDICTION AND VENUE

6. Defendant is subject to specific personal jurisdiction in this District, as it directed communications and business dealings towards RCA in Henrico County, Virginia, ordered products and services from RCA in Henrico County, Virginia, and otherwise contractually agreed to the courts located in Henrico County, Virginia, for the resolution of disputes related to the LSA, as hereinafter defined.

7. Original Jurisdiction is properly vested in the Circuit Court of Virginia pursuant to Va. Code §19.2-239. This Court has personal jurisdiction over Defendant by virtue of the fact that Defendant conducts business in this Commonwealth. Venue is appropriate in the Circuit Court for the County of Henrico, Virginia pursuant to Va. Code §8.01-262(4).

8. Defendant removed this matter to the United States District Court for the Eastern District of Virginia, allegedly pursuant to the Court's diversity jurisdiction, under 28 USC §1446, on or about December 20, 2023. RCA does not waive its right to seek a remand of the matter due to the lack of diversity jurisdiction.

## BACKGROUND AND FACTS

9. Plaintiff is a health management service company specializing in genetic, pharmacogenomics, and pathogen testing, including Molecular Diagnostic Testing Services for the detection of COVID-19 infections (collectively "MDT Services").

10. During the COVID-19 pandemic, and particularly as various states and jurisdictions began permitting individuals to return to in-person work, Plaintiff either provided COVID-19 testing kits and/or MDT Services for samples collected using testing materials provided by Plaintiff to various governmental and non-governmental entities.

11. Pursuant to the Laboratory Services Agreement dated July 30, 2020, and an Amendment dated May 24, 2021 (a true and correct copy of which are attached hereto as **Exhibit 1,** the "LSA") Defendant contracted with Plaintiff for COVID-19 MDT Services relative to samples/specimens collected by Defendant at its various facilities throughout the United States; the LSA provides Defendant was required to pay Plaintiff $105 for each specimen tested by Plaintiff. *See* Exhibit 1, §§1-5.

12. The LSA was executed on behalf of Defendant by Sara Hamm, Chief Clinical & Public Health Officer, who was duly authorized to execute such Agreement on Defendant's behalf and/or had apparent authority to execute such Agreement on Defendant's behalf.

13. Operating pursuant to the terms of the LSA and further consistent with the pattern of dealing between Defendant/Plaintiff and any and all oral understandings between Plaintiff and Defendant, Plaintiff provided COVID-19 MDT Services to Defendant in a total amount of $2,019,420.

14. Notwithstanding any understanding or agreement that amounts owed under the LSA would first be charged to Defendant's insurance carrier(s), the LSA is clear that any amount not covered or paid by Defendant's insurance carrier(s), such as the amount sought herein, was the

sole responsibility of Defendant. *Id.* at §4.

15. RCA, where appropriate, submitted requests for payment to insurance carriers based upon insurance information provided by Defendant and in a manner consistent with reasonable billing practices. Despite non-payment from the insurance carrier(s), Defendant has failed to pay Plaintiff in full for the value of MDT Services completed by Plaintiff for Defendant's benefit pursuant to the LSA.

16. Defendant has never disputed receiving the benefit of the aforementioned MDT Services nor has it ever complained of Plaintiff's performance under the LSA.

17. The MDT Services performed by Plaintiff for Defendant and the amount owed by Defendant to Plaintiff, which amount has not been paid as of the date hereof, are evidenced by the invoices/purchase orders (collectively, the "Invoices") attached collectively hereto as **Exhibit 2**.

18. Defendant has never disputed the amounts set forth in the Invoices.

19. Accordingly, Plaintiff is therefore owed $2,019,420 by Defendant in exchange for said MDT Services.

20. Plaintiff issued a demand letter (the "Demand Letter"), requesting payment for the MDT Services performed for Defendant on or about May 30, 2023, and had follow-up communications with defendant in which it provided detailed information to the Defendant via a dropbox link (which information included uninsured and rejected claims). A true and correct copy of the Demand Letter, along with proof of delivery, is attached hereto as **Exhibit 3**.

21. To date, Plaintiff has received no payment or promise of payment from Defendant relative to the Demand Letter and amounts claimed therein. Based upon Defendant's failure to make payment or arrangements therefore, Plaintiff was compelled to bring the instant Action to recover the $2,019,420 which remains outstanding, due, and owing from Defendant to Plaintiff.

## CLAIMS FOR RELIEF

### Count 1
*Breach of Contract - LSA*

22. Plaintiff hereby incorporates each of the foregoing paragraphs as if each were set forth at length herein.

23. The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004).

24. Pursuant to the LSA Plaintiff and Defendant contracted for Plaintiff to provide COVID-19 MDT Services to Defendant.

25. Plaintiff did provide the MDT Services contemplated by the LSA at a cost to Defendant totaling $2,019,420.

26. Defendant has not paid Plaintiff for the MDT Services provided under the LSA, has not disputed receiving the benefit of the aforementioned MDT Services, and has not claimed that Plaintiff breached the LSA in any way.

27. Accordingly, Defendant has breached its contract with Plaintiff and owes Plaintiff a total of $2,019,420 per the terms of the LSA.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in its favor and against Defendant on this Count 1 for breach of contract in the amount of $2,019,420, along with any relief favorable to Plaintiff this Honorable Court deems warranted and just.

### Count 2
*Breach of Contract - Implied Covenant of*
*Good Faith and Fair Dealing Under The LSA*

28. Plaintiff hereby incorporates each of the foregoing paragraphs as if each were set forth at length herein.

29. Under Virginia law, "the elements of a claim for breach of an implied covenant of good faith and fair dealing are (1) a contractual relationship between the parties, and (2) a breach of the implied covenant." *Enomoto v. Space Adventures, Ltd*, 624 F. Supp.2d 443, 450 (E.D. Va. 2009) (citing Charles E. Brauer Co., Inc. v. NationsBank of Va., N.A., 251 Va. 28, 34 (Va. 1996).

30. There are "two ways in which the duty of good faith and fair dealing may be breached: (1) where a party has a clear contract right, even if its exercise would arguably be arbitrary, that party is only forbidden from acting dishonestly, (2) but where a party has discretion in performance, that party cannot act arbitrarily or unfairly." *Stoney Glen, LLC v. S. Bank & Trust Co.*, 944 F. Supp.2d 460, 466 (E.D. Va. 2013) (citations omitted), clarified on denial of reconsideration, 2013 WL 4539736 (E.D. Va. 2013).

31. As courts have acknowledged, "Virginia law on the implied duty of good faith and fair dealing is not exceptionally clear." *Stoney Glen*, 944 F. Supp.2d 460, 467.

32. The Supreme Court of Virginia has held, "when . . . parties to a contract create valid and binding rights, one party does not breach the [Uniform Commercial Code's ("U.C.C.")] obligation of good faith by exercising such rights[.]" *Charles E. Brauer Co. v. NationsBank of Va., N.A.*, 251 Va. 28, 466 S.E.2d 382 (1996).

33. The court has expanded this doctrine beyond U.C.C. contracts, holding that, "when parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights." Ward's Equipment, Inc. v. New Holland N. Am., Inc., 254 Va. 379, 385 (1997).

34. Plaintiff provided COVID-19 MDT Services at the rates set by the LSA.

35. Defendant's failure to abide by the terms of the LSA and its abuse of the rolling nature of its relationship with Plaintiff by which it received MDT Services from Plaintiff in exchange for no compensation directly evidence Defendant's bad-faith relative to its obligations

6

under the LSA and as such, Defendant breached the covenant of good faith and fair dealing.

36. Accordingly, Defendant is liable to Plaintiff in an amount of at least $2,019,420.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in its favor and against Defendant on this Count 2 for breach of the implied covenant of good faith and fair dealing in the amount of $2,019,420, along with any relief favorable to Plaintiff this Honorable Court deems warranted and just.

### Count 3
*Action on Account Stated*

37. Plaintiff hereby incorporates each of the foregoing paragraphs as if each were set forth at length herein.

38. The Supreme Court of Virginia expressly stated that, "when there is a settled account, that becomes the cause of action, and not the original account; although it grew out of an account between merchant and merchant, their factors or servants." *Quadriga Art, Inc. v. Law Enf't All. of Am.*, 70 Va. Cir. 99, 100-01 (Cir. Ct. 2005) citing *Ellison v. Weintrob,* 139 Va. 29, 35, 123 S.E. 512 (1924).

39. Lacking an expressly settled account, an account stated also exists where a set of circumstances exist that collectively create a presumption that over time an unsettled account has become an ascertained debt. An account is presumed to be settled via an implied admission where a party retains, "for a long time, without objection, the account of the other party, which has been presented to him, showing a balance against him." *Id.* (quoting approvingly from *Watson v. Lyle's Adm'r,* 31 Va. 236, 4 Leigh 236, 249 (1833)). As such, where these circumstances exist, "all intricacy of account, or doubt as to which side the balance may fall, is at an end." *Id.*

40. During the course of the relationship between Plaintiff and Defendant relative to the COVID-19 MDT Services performed by Plaintiff for Defendant, Plaintiff provided to Defendant invoices/statements for work performed.

41. Defendant never objected to the accuracy of the aforementioned Invoices for work performed.

42. Nevertheless, Defendant failed to make payment on those amounts contained in the Invoices..

43. Defendant's action and inaction relative to the Invoices constitutes an assent to the legitimacy of the amounts owed to Plaintiff by Defendant in the Invoices.

44. Accordingly, Defendant is liable to Plaintiff in an amount of at least $2,019,420.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in its favor and against Defendant on this Count 3 for accounts stated in the amount of $2,019,420, along with any relief favorable to Plaintiff this Honorable Court deems warranted and just.

### Count 4
### *Quantum Meruit*
### *Asserted in the Alternative*

45. Plaintiff hereby incorporates each of the foregoing paragraphs as if each were set forth at length herein.

46. *Quantum meruit* provides that "[w]here service is performed by one, at the instance and request of another, and . . . nothing is said between the parties as to compensation for such service, the law implies a contract, that the party who performs the service shall be paid a reasonable compensation therefor." *T. Musgrove Constr. Co.*, 840 S.E.2d at 341 (quoting *Mongold v. Woods*, 677 S.E.2d 288 (Va. 2009)).

47. "The measure of recovery for *quantum meruit* . . . is the reasonable value of the services provided." *Id.* at 341.

48. Quantum meruit requires an implied-in-fact contract, where "the typical requirements to form a contract are present, such as consideration and mutuality of assent." *Spectra-4, LLP v. Uniwest Com. Realty, Inc.*, 772 S.E.2d 290, 295 (Va. 2015).

49. Unlike express contracts, for implied-in-fact contracts the parties' *conduct* is "the manner in which mutuality of assent is established" *id.*, and "some of the terms and conditions are implied in law from the conduct of the parties," such as "definite compensation," or an "agreed upon salary." *Marine Dev. Corp. v. Rodak*, 300 S.E.2d 763, 766 (Va. 1983).

50. Thus, "quantum meruit is available when (1) the parties contract for work to be done, but the parties did not agree on a price, (2) the compensation mentioned is too indefinite, (3) there is a misunderstanding as to the price to be paid, or, (4) in some instances, the contract is void and of no effect." *T. Musgrove Constr. Co.*, 840 S.E.2d at 341.

51. Defendant requested and received services from Plaintiff in the form of COVID-19 MDT Services.

52. Defendant benefited from the services received from Plaintiff.

53. Defendant has not compensated Plaintiff for its efforts in providing the COVID-19 MDT Services.

54. Accordingly, Defendant has been unjustly enriched by Plaintiff's efforts, which unjust enrichment can only be remedied by requiring Defendant to pay to Plaintiff the consideration owed for the MDT Services.

55. Therefore, Defendant is liable to Plaintiff in an amount of at least $2,019,420.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in its favor and against Defendant on this Count for Quantum Meruit in the amount of $2,019,420, along with any relief favorable to Plaintiff this Honorable Court deems warranted and just.

<u>**Count 5**</u>
*Unjust Enrichment*
*Asserted in the Alternative*

56. Plaintiff hereby incorporates each of the foregoing paragraphs as if each were set forth at length herein.

57. Unjust enrichment applies when "(1) 'plaintiff conferred a benefit on defendant; (2) defendant knew of the benefit and should reasonably have expected to repay plaintiff; and (3) defendant accepted or retained the benefit without paying for its value.'" *Fessler*, 959 F.3d at 157 (quoting *T. Musgrove Constr. Co.*, 840 S.E.2d at 341) (alterations omitted). "The measure of recovery for unjust enrichment is limited to the benefit realized and retained by the defendant." *T. Musgrove Constr. Co.*, 840 S.E.2d at 341.

58. Unlike quantum meruit, unjust enrichment arises from "quasi contracts, or 'contracts implied in law,' in which the assent of the parties is immaterial," and "the promise [to pay] is implied from the consideration received." *Marine Dev. Corp.*, 300 S.E.2d at 766 (internal quotation marks and citation omitted).

59. Typical examples of unjust enrichment involve a payment or overpayment made due to a mistake of fact, *Cent. Nat'l Bank of Richmond v. First & Merchs. Nat'l Bank of Richmond*, 198 S.E. 883 (Va. 1938), or the acceptance of services without a contract for those services, *Po River Water & Sewer Co. v. Indian Acres Club of Thornburg, Inc.*, 495 S.E.2d 478 (Va. 1998).

60. While "quantum meruit requires a request for services, unjust enrichment does not." *Fessler*, 959 F.3d at 157.

61. Defendant requested and received services from Plaintiff in the form of COVID-19 MDT Services.

62. Defendant benefited from the services received from Plaintiff.

63. Defendant has not compensated Plaintiff for its efforts in providing the COVID-19 MDT Services.

64. Accordingly, Defendant has been unjustly enriched by Plaintiff's efforts, which unjust enrichment can only be remedied by requiring Defendant to pay to Plaintiff the consideration owed for the MDT Services.

65. Therefore, Defendant is liable to Plaintiff in an amount of at least $2,019,420.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in its favor and against Defendant on this Count for Unjust Enrichment in the amount of $2,019,420, along with any relief favorable to Plaintiff this Honorable Court deems warranted and just.

*Respectfully submitted,*

*Allison K. Riddle*
Robert T. Hicks (VSB No. 45462)
Allison K. Riddle (VSB No. 93727)
BEAN, KINNEY & KORMAN, P.C.
2311 Wilson Boulevard, Suite 500
Arlington, Virginia 22201
Phone: 703 – 525 – 4000
Fax:    703 – 525 – 2207
rhicks@beankinney.com
ariddle@beankinney.com

*Counsel for Plaintiff RCA Laboratory Services, LLC d/b/a GENETWORx*

**SILVERANG, ROSENZWEIG & HALTZMAN, LLC**

Philip S. Rosenzweig, Esquire (*pro hac vice forthcoming*)
Malcolm S. Gould, Esquire (*pro hac vice forthcoming*)
PA Atty. I.D. Nos. 62461 /80254
900 East 8th Avenue, Suite 300
King of Prussia, PA  19406

*Attorneys for Plaintiff, RCA Laboratory Services, LLC d/b/a GENETWORx*